IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CONSTANTINO ALTAMIRANO RUIZ,

    Petitioner,

  v.

LARRY SCRIBER, Warden,

    Defendant.
                                  /

No. C 07-00020 WHA

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Constantino Altamirano Ruiz filed this habeas corpus petition pursuant to 28 U.S.C. 2254. In August 2003, a Santa Clara County jury convicted him of first-degree murder in the stabbing death of his wife, and he was sentenced to life without parole and a consecutive sentence of twelve years. Petitioner claims the trial court improperly admitted hearsay statements in violation of his Sixth Amendment right to confront adverse witnesses. For the reasons stated below, the Court rejects petitioner's claims. His petition is **DENIED**.

## STATEMENT

Petitioner went to jail in August 2000 after pleading guilty to two counts of domestic violence against his wife, Manuela Altamirano. While petitioner was in jail, Ms. Altamirano dated Eduardo Cabrera for approximately three weeks (Tr. at 2845–66). Petitioner returned home on November 16, 2000, to the apartment in San Jose that he shared with his wife, their three young sons, their live-in housekeeper and nanny Maria Mota, and Ivan, petitioner's son

1  from a previous marriage (*id.* at 2430–31, 39). Upon petitioner's return, Ms. Altamirano said
2  she had been unfaithful to him. Petitioner suspected in early December that the other man was
3  Mr. Cabrera (*id.* at 3260–62).

4  On December 18, 2000, Ms. Altamirano called the police from a payphone about three
5  blocks from her apartment to report that petitioner had shoved her chest with two hands.
6  She wanted to press charges, but the police were unable to find petitioner that day. The next
7  day, Ms. Altamirano called the police again because petitioner had returned and she was afraid
8  to return to the apartment. Police officer Mark Efigenio arrived and interviewed
9  Ms. Altamirano. She told him that petitioner had shoved her, and that she had been too afraid
10 to call police in previous instances of abuse. She also claimed that, three weeks earlier,
11 petitioner had raped her while pinning her down with one hand and gouging at her eyes with the
12 other. Officer Efigenio then took Ms. Altamirano and the children to a family violence center
13 where she appeared timid, emotional, and scared; she cried when discussing the abuse she had
14 suffered. On December 21, 2000, San Jose police officer Dario Estrabao interviewed
15 Ms. Altamirano while she was still at the family violence center and he learned more about the
16 violence that occurred between petitioner and his wife. She said that petitioner had forced her
17 to have sex in the past and had gone to jail for hitting her three times. This interview was
18 recorded and later played for the jury at trial (*id.* at 2461–88).

19 Petitioner's last day at work as a handyman at a liquor store was December 22, 2000.
20 Petitioner appeared nervous that day, and his coworker Rosa Yanez stated that he hid his face
21 when people walked into the store. He told Ms. Yanez that he was going to kill Ms. Altamirano
22 because she did not want him anymore. His work was unsatisfactory that day, and he left
23 electrical wires exposed at the end of the day. Ms. Yanez called Ms. Altamirano that evening
24 and expressed concern for Ms. Altamirano's safety, telling her to be careful of petitioner.
25 Ms. Yanez called again the next day to find out why petitioner had not reported to work and to
26 see if Ms. Altamirano was all right (*id.* at 2327–37, 2694–2745).

27 On Christmas Eve, Ms. Altamirano's housekeeper heard petitioner and Ms. Altamirano
28 arguing about whether petitioner could stay for Christmas. Ms. Altamirano seemed angry while

2

1  petitioner seemed sad.  The housekeeper saw scratches and fingernail marks on
2  Ms. Altamirano's neck.  Ms. Altamirano's neighbor also saw one-inch purple bruises on
3  Ms. Altamirano's neck.  Petitioner, Ms. Altamirano, their housekeeper, and the children
4  attended a Christmas Eve party at a friend's house that night, where petitioner and
5  Ms. Altamirano briefly danced.  Ms. Altamirano then left with the children, and petitioner
6  remained at the party.  He slept at the friend's house that night.  Ms. Altamirano also called
7  her former lover, Mr. Cabrera that night (*id.* at 2390–2584).

8  On Christmas morning, petitioner consumed three twelve-ounce beers before getting
9  a ride back to the apartment (*id.* at 2624–25).  There, he appeared calm and told Ms. Altamirano
10 he wanted to repair their marriage.  She said she did not want to be in a relationship with
11 petitioner anymore and went upstairs.  Petitioner spoke briefly with the housekeeper about what
12 he could do to win Ms. Altamirano back and then followed her upstairs.  A few minutes passed
13 when the housekeeper heard something slam upstairs.  Ms. Altamirano screamed the
14 housekeeper's name.  The housekeeper went upstairs to see petitioner stabbing Ms. Altamirano
15 repeatedly with a screwdriver, whereupon she screamed and ran downstairs.  The housekeeper
16 went over to the neighbors and called the police while petitioner left the scene on his bicycle.
17 Ms. Altamirano was still alive when the paramedics arrived but died shortly after being placed
18 in the ambulance.  Ms. Altamirano suffered 21 blunt-force injuries and 42 stab wounds, which
19 caused her to bleed to death (*id*. at 2247–2248, 2490–2588).

20 On December 26, 2000, Mr. Cabrera received a phone call from a person who asked
21 if he knew Ms. Altamirano was dead.  When Mr. Cabrera answered in the negative, the caller
22 identified himself as "Tino" and said that Mr. Cabrera was next.  On December 28, 2000,
23 Bertha Moreno received a call from petitioner.  Petitioner told her that he was going to Mexico
24 and that he had "to kill two more dogs" before going.  The police arrested petitioner on
25 December 29, 2000, outside Ms. Moreno's apartment (*id*. at 2806–2858).

26 At trial, the jury heard both Ms. Altamirano's recorded interview through
27 Officer Estrabao's testimony and a description of her statement to Officer Efigenio through his
28 testimony.  The court admitted hearsay statements made by Ms. Altamirano on December 19

3

and December 21, 2000, about the rape that occurred three weeks prior and about petitioner's physical abuse (*id.* at 622–36, 2019–29). The interview was originally conducted in Spanish and translated for the jury by Officer Estrabao and the prosecutor (*id.* at 759–77, 2049–93). Ms. Altamirano described the instance of spousal rape in detail, including statements with respect to "strangling" and petitioner pushing his fingers into her eyes during the rape. Ms. Altamirano further said that petitioner "always" forced her to have sex even though she did not want it. She said she was afraid that petitioner would "do more things" if she did not have sex with him (Trav. Exh. B at 11).

Petitioner had two trials. In his first trial, the jury convicted petitioner of criminal threat and spousal rape but hung on the murder charge. His retrial in 2003 resulted in a conviction and life sentence without parole and a consecutive sentence of twelve years. At both of petitioner's criminal trials, the court determined that Ms. Altamirano's statements were admissible under California Evidence Code Section 1370(a), a hearsay exception. This exception allows a court to admit statements that explain the infliction or threat of physical injury upon a declarant who is later rendered unavailable. The first contested statement was Officer Efigenio's testimony regarding his interview with Ms. Altamirano to discuss the spousal rape allegations. The second contested statement was Officer Estrabao's statement, which included the in-court playback of a tape-recorded interview with Ms. Altamirano. The recording was also played while the prosecutor cross-examined petitioner at the first trial, and the prosecutor asked petitioner questions based on the recording (Tr. at 1253–67, 1273–85). The prosecutor did not play the tape at the second trial but referenced it in detail (*id.* at 3517–522, 3618–621). The prosecutor also discussed the statements during closing arguments (*id.* 1570–62, 4273–75, 4352–53).

In his state appeal, petitioner argued that the two statements should have been excluded based on the Supreme Court decision in *Crawford v. Washington*, 541 U.S. 36, 59 (2004), which stated that "testimonial statements" should be excluded if the declarant is unable to testify and the defendant did not have an opportunity to cross-examine the declarant (Ans. 7). The state appellate court held that, while Ms. Altamirano's statements were testimonial in

4

nature, petitioner had "forfeited his confrontation clause argument because of his own wrongdoing," namely wrongfully killing the declarant. *People v. Ruiz*, 2005 WL 1670426 (Cal. App. 6th Dist. 2005). The California Supreme Court denied review. *People v. Ruiz*, 2005 Cal. LEXIS 11581 (Cal. 2005). A petition for a writ of habeas corpus was filed herein on January 3, 2007.

## ANALYSIS

### 1. LEGAL STANDARD UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT.

The Antiterrorism and Effective Death Penalty Act governs district court review of petitions for writs of habeas corpus. Persons in custody pursuant to a state-court judgment may be provided habeas relief by a federal court if they are held in violation of the Constitution, laws, or treaties of the United States. A petitioner must establish that, for any claim adjudicated on the merits, the state-court decision either (1) was contrary to clearly established federal law, as determined by the United States Supreme Court; (2) involved an unreasonable application of clearly established federal law, as determined by the Supreme Court; or (3) was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. 2254.

The phrase "clearly established" in AEDPA refers to the holdings, as opposed to the dicta, of decisions of the Supreme Court as of the time of the relevant state court decision; in other words, "clearly established Federal law" is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

A state court's decision is "contrary to" federal law if it fails to apply the correct Supreme Court authority to a question of law or if it applies such authority incorrectly to a case involving facts "materially indistinguishable" from those in the controlling decision. A state court's decision involves an "unreasonable application" of federal law if it applies the governing Supreme Court rule in a way that is objectively unreasonable. *Williams v. Taylor*, 529 U.S. 362, 405, 409-10 (2000). The Ninth Circuit has held that, in AEDPA cases, determinations of factual issues by a state court must be presumed correct unless they are the

5

result of an "unreasonable determination." *Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004). This presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

### 2. WHAT IS THE "CLEARLY ESTABLISHED FEDERAL LAW" WITH RESPECT TO THE CONFRONTATION CLAUSE?

According to *Crawford v. Washington*, testimonial hearsay is the "primary object" of the Sixth Amendment. 541 U.S. 36, 53 (2004). An out-of-court statement by a witness that is testimonial hearsay is barred under the Confrontation Clause unless (1) the witness is unavailable, and (2) the accused had a prior opportunity to cross-examine the witness. *Id.* at 59. Generally extrajudicial statements contained in formalized testimonial materials are testimonial (*e.g.*, depositions, confessions and prior testimony). Statements taken by police officers in the course of an interrogation are also testimonial (*id.* at 51–52). While the Confrontation Clause does not necessarily bar the admission of hearsay statements, it may prohibit introducing evidence that otherwise would be admissible under a hearsay exception. *See Idaho v. Wright*, 497 U.S. 805, 813, 814 (1990).

Under *Davis v. Washington*, 126 S. Ct. 2266, 2273–74 (2006), "[st]atements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." The first contested statement was to Officer Efigenio, when Ms. Altamirano said that petitioner had pushed her the day before and raped her three weeks earlier. The second contested statement was made to Officer Estrabao two days later, when Ms. Altamirano repeated her accusations on tape. Under the *Davis* standard, it is likely that Ms. Altamirano's statements were testimonial because there was no ongoing emergency; the police did not need to elicit these statements from Ms. Altamirano to assist in an ongoing emergency. Furthermore, interviewing a victim of domestic violence was part of the procedure to establish

6

1  or prove past events potentially relevant to a later criminal prosecution, if petitioner were to be
2  charged with rape.

3       The California Court of Appeal held that Ms. Altamirano's statements were "clearly,
4  testimonial," which went undisputed by both parties, although the court went on to hold that
5  petitioner had forfeited his confrontation rights by his own wrongdoing.  The statements were
6  also hearsay; her statements were made out of court and offered to prove the truth of the matter
7  asserted.  Even though Ms. Altamirano's statements fell squarely within the California hearsay
8  exception, they should have been barred (over objection) because Ms. Altamirano was
9  unavailable and petitioner did not have a prior opportunity to cross-examine the witness,
10 unless some exception to the normal rule applied.

### 3. WHAT IS THE "CLEARLY ESTABLISHED FEDERAL LAW" WITH RESPECT TO THE DOCTRINE OF FORFEITURE BY WRONGDOING?

13       The Supreme Court in *Crawford* made an exception to the Confrontation Clause.
14 "[T]he rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation
15 claims on essentially equitable grounds." *Crawford*, 541 U.S. at 62.  The doctrine of
16 forfeiture-by-wrongdoing is best known from the 1879 Supreme Court decision in *Reynolds v.*
17 *United States,* cited in *Crawford*.  Chief Justice Morrison Waite wrote:  "The Constitution gives
18 the accused the right to a trial at which he should be confronted with the witnesses against him;
19 but if a witness is absent by his own wrongful procurement, he cannot complain if competent
20 evidence is admitted to supply the place of that which he has kept away.  The Constitution does
21 not guarantee an accused person against the legitimate consequences of his own wrongful acts.
22 It grants him the privilege of being confronted with the witnesses against him.  But if he
23 voluntarily keeps the witnesses away, he cannot insist on his privilege.  If, therefore, when
24 absent by his procurement, their evidence is supplied in some lawful way, he is in no condition
25 to assert that his constitutional rights have been violated." *Reynolds v. United States*, 98 U.S.
26 145, 158 (1879).  *Reynolds* is generally cited for the proposition that the accused should not
27 benefit from his wrongful acts.

7

1    The doctrine of forfeiture-by-wrongdoing has been codified as a hearsay exception in
2 FRE 804(b)(6), which states that "[a] statement offered against a party that has engaged or
3 acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the
4 declarant as a witness" is admissible.
5    The Supreme Court and the Ninth Circuit has not yet ruled on the constitutional issue,
6 and the circuits are split as to how important the intent requirement is.  The Eighth and
7 Second Circuits seem to say that forfeiture-by-wrongdoing doctrine did not require the
8 government to show that the defendant's sole intent was to silence the witness.
9 In *United States v. Emery*, the Eighth Circuit held that a defendant forfeits his constitutional
10 right of confrontation "with respect to any witness or potential witness whose absence a
11 defendant wrongfully procures."  186 F.3d 921, 926 (8th Circ. 1999).  The Eighth Circuit
12 therefore rejected defendant's contention that the hearsay exception should only apply in a trial
13 on other crimes in which the declarant might testify, not in a trial for the declarant's murder.
14 It further held that FRE 804(b)(6) "contains no limitation on the subject matter of the statements
15 that it exempts from the prohibition of hearsay evidence" (*ibid.*).  In *United States v. Dhinsa*,
16 the Second Circuit held that, to admit evidence under the hearsay exception applicable where
17 defendant has procured the absence of the declarant, the government need not show that the
18 defendant's sole motivation was to procure the declarant's absence; rather, the government
19 need only show that the defendant was motivated in part by a desire to silence the declarant.
20 243 F.3d 635, 653–54 (2d Cir. 2001).  The First Circuit in *United States v. Houlihan*, however,
21 held that "when a person who eventually emerges as a defendant (1) causes a potential witness's
22 unavailability (2) by a wrongful act (3) undertaken with the intention of preventing the potential
23 witness from testifying at a future trial, then the defendant waives his right to object on
24 confrontation grounds to the admission of the unavailable declarant's out-of-court statements at
25 trial."  92 F.3d 1271, 1280 (1st Cir. 1996).
26    While the forfeiture-by-wrongdoing doctrine is clearly established federal law,
27 as determined by *Reynolds*, the intent-to-silence requirement is not.  The literal language of
28 FRE 804(b)(6) is not controlling in analyzing the Confrontation Clause because the

8

Federal Rules of Evidence are a "nonconstitutional" source. *Dowling v. United States*, 493 U.S. 342, 352 (1990). The only clearly established federal law with respect to the doctrine of forfeiture-by-wrongdoing is articulated in *Crawford* and *Reynolds*. The Supreme Court referred to the doctrine in its dictum of *Crawford*, but it explicitly adopted the doctrine. The Supreme Court stated that "the rule of forfeiture by wrongdoing (*which we accept*) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability." 541 U.S. at 62 (emphasis added). *Crawford* then cited to *Reynolds*. In *Reynolds*, the Supreme Court stated that, "if [the defendant] voluntarily keeps the witnesses away, he cannot insist on his privilege. If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated." 98 U.S. at 158. The intent-to-silence requirement is not clearly established in these two cases, but having a forfeiture-by-wrongdoing exception to the Confrontation Clause is.

### 4. DID THE STATE COURT'S ADJUDICATION OF THE CLAIM RESULT IN A DECISION THAT WAS CONTRARY TO OR INVOLVED AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW?

The California Court of Appeal analyzed the forfeiture-by-wrongdoing issue in length. It concluded that, "[u]ltimately, if the forfeiture rule is to further the maxim that 'no one shall be permitted to take advantage of his wrong,' then the motivation for the wrongdoing must be deemed irrelevant. Whether a murder is motivated by a desire to silence a witness, financial gain, or mere sadism, the murderer should not be permitted to gain an advantage. We acknowledge that the intent-to-silence element is firmly ensconced in the forfeiture-by-wrongdoing case law. Although we are respectful of this contrary authority, we believe it to be misguided on this point" (Opn. at 11).

The state court's adjudication of the claim did not result in a decision that was contrary to or involved an unreasonable application of clearly established federal law. A state court's decision is contrary to federal law if it fails to apply the correct Supreme Court authority to a question of law or if it applies such authority incorrectly to a case involving facts materially indistinguishable from those in the controlling decision. A state court's decision involves an

9

unreasonable application of federal law if it applies the governing Supreme Court rule in an objectively unreasonable manner. *Williams,* 529 U.S. at 409–10.

Given that the Supreme Court had not yet ruled on the intent sub-issue and there were conflicting authorities from the circuit courts, it was not unreasonable for the state court to apply the forfeiture-by-wrongdoing on equitable grounds, as originally stated in the dictum of *Crawford*.[*] Here, Ms. Altamirano made statements regarding domestic violence and spousal rape to two officers. Petitioner then murdered her. Under the forfeiture-by-wrongdoing doctrine, it was not a contrary or unreasonable application of clearly established federal law to admit the hearsay statements because petitioner had voluntarily (and wrongfully) kept the witness away, and the evidence was supplied in some lawful way (under the California Evidence Code hearsay exception). Petitioner was not subject to the protections of the Confrontation Clause under these circumstances.

Because the admission of the deceased victim's testimonial statements at trial did not violate the Confrontation Clause and was not in error, this Court does not need to undertake a harmless error analysis.

## CONCLUSION

For the reasons stated above, the petition for writ of habeas corpus is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 20, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[*] The Court recognizes that the Ninth Circuit has held that, in the Section 1983 context, the court must rule on what constitutes the clearly established federal law so it can educate future holdings. *See*, *e.g.*, *Motley v. Parks*, 432 F.3d 1072, 1077–78 (9th Cir. 2005) ("The Supreme Court has placed strong emphasis on the need to concentrate at the outset on the definition of the constitutional right. The threshold inquiry is intended to 'set forth principles which will become the basis for a holding that a right is clearly established' in later cases.'") (internal citations omitted). This holding has not been extended to AEDPA cases, with good reason. What constitutes clearly established federal law under AEDPA is Supreme Court authority. This Court, therefore, cannot determine what clearly established federal law is under AEDPA. *See e.g.*, *Foote v. Del Papa*, 492 F.3d 1026, 1029 (9th Cir. 2007) (holding that the state post-conviction court did not act contrary to or unreasonably apply federal law in this AEDPA case where the question was an open one, inasmuch the Supreme Court had never ruled on it.).